THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| RONALD R. FERNAU, | ) | 4:06CV3173 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of the Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff Ronald R. Fernau appeals the denials of his applications for disability insurance benefits and supplemental security income benefits. After careful review of the administrative record and the parties' pleadings and briefs, I conclude that the Commissioner's decision should be affirmed.

## I.  BACKGROUND

Fernau, now age 52, applied for disability insurance benefits and supplemental security income on May 18, 2004, alleging that he became disabled on May 25, 1998.[1]  In his Daily Activities and Symptoms Report, Fernau listed his symptoms as numbness in his feet and legs caused by insulin-dependent diabetes, high blood pressure, hearing loss, and lower back pain.  (Tr. 58-60, 76, 257-59.)  At his administrative hearing, Fernau stated that the "only thing" that "makes [him] disabled" is his diabetes, and his health problems since 1999 "all more or less relates

---

[1]Fernau amended his disability-onset date to May 25, 1999, at the administrative hearing on his applications for social security benefits.  (Tr. 272-73.)

from [sic] the diabetes."  (Tr. 275-76.)

Fernau's applications for benefits were denied initially and on reconsideration. On January 26, 2006, following a hearing, an administrative law judge ("ALJ") found that Fernau was not under a "disability" as defined in the Social Security Act.  (Tr. 10-22.)  On May 30, 2006, the Appeals Council of the Social Security Administration denied Fernau's request for review.  (Tr. 5-7.)  Thus, the decision of the ALJ stands as the final decision of the Commissioner.

## A.  Findings by the ALJ

The ALJ evaluated Fernau's claims according to the five-step sequential analysis prescribed by the social security regulations.  See 20 C.F.R. §§ 404.1520 & 416.920.[2]  Among other things, the ALJ found (1) that Fernau had not engaged in any substantial gainful activity since the onset of his disability; (2) that Fernau has medically determinable impairments consisting of "diabetes with complications extended to the left hip and foot and disorders of the back"; (3) that while these

---

[2] "At the first step, the claimant must establish that he has not engaged in substantial gainful activity.  The second step requires that the claimant prove he has a severe impairment that significantly limits his physical or mental ability to perform basic work activities.  If, at the third step, the claimant shows that his impairment meets or equals a presumptively disabling impairment listed in the regulations, the analysis stops and the claimant is automatically found disabled and is entitled to benefits.  If the claimant cannot carry this burden, however, step four requires that the claimant prove he lacks the [residual functional capacity] to perform his past relevant work.  Finally, if the claimant establishes that he cannot perform his past relevant work, the burden shifts to the Commissioner at the fifth step to prove that there are other jobs in the national economy that the claimant can perform."  Gonzales v. Barnhart, 465 F.3d 890, 894 (8th Cir. 2006).

impairments are "severe" under the regulations,[3] they do not meet or equal one of the impairments listed in 20 C.F.R., Part 404, Subpart P, Appendix 1; (4) that Fernau lacks the residual functional capacity to perform any of his past relevant work; and (5) that Fernau retains the capacity to perform certain "light and unskilled" occupations which exist in significant numbers in the national and regional economies, such as a product assembler, hand packager, and cashier, and thus is not "disabled."  (Tr. 20-22, 295-97.)

## B.  Issues on Appeal

Fernau claims the ALJ erred when he (1) failed to accept as "controlling" the limitations and restrictions placed upon Fernau by his treating physician, Melvin Campbell, M.D., whose limitations "fairly nearly parallel the testimony of the plaintiff"; (2) failed to give Dr. Campbell's opinions "the greatest weight" based upon his 18-year examining relationship with Fernau, the frequency and nature of such treatment, the supportability of Campbell's opinions, and the consistency of Campbell's opinions with the record as a whole; (3) failed to incorporate all of Fernau's documented limitations and conditions into the hypothetical question posed to the vocational expert ("VE"); and (4) failed to properly apply Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984), when determining the credibility of Fernau's subjective allegations of his physical limitations, restrictions, and work activity. (Filing 11, Pl.'s Br. at 5-6.)

## II.  DISCUSSION

A denial of benefits by the Commissioner is reviewed to determine whether

---

[3] "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1521(a) & 416.921(a).

3

the denial is supported by substantial evidence on the record as a whole.  Hogan v. Apfel, 239 F.3d 958, 960 (8th Cir. 2001).   "Substantial evidence" is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.  Id. at 960-61; Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000).  Evidence that both supports and detracts from the Commissioner's decision must be considered, but the decision may not be reversed merely because substantial evidence supports a contrary outcome.  See Moad v. Massanari, 260 F.3d 887, 890 (8th Cir. 2001).

## A.  Failure to Consider Opinions of Treating Physician as "Controlling" or of "Greatest Weight"

Citing SSR 96-2p,[4] Fernau argues that the ALJ failed to detail, discuss, or

---

[4]This Social Security Ruling emphasizes that:

1.  A case cannot be decided in reliance on a medical opinion without some reasonable support for the opinion.

2.  Controlling weight may be given only in appropriate circumstances to medical opinions, i.e., opinions on the issue(s) of the nature and severity of an individual's impairment(s), from treating sources.

3.  Controlling weight may not be given to a treating source's medical opinion unless the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques.

4.  Even if a treating source's medical opinion is well-supported, controlling weight may not be given to the opinion unless it also is "not inconsistent" with the other substantial evidence in the case record.

5.  The judgment whether a treating source's medical opinion is well-supported and not inconsistent with the other substantial evidence in the case record requires an understanding of the clinical signs and laboratory findings and what they signify.

6.  If a treating source's medical opinion is well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight; i.e., it must be adopted.

4

discount the opinions of Fernau's treating physician, Dr. Melvin Campbell. Fernau contends that "[a]ll of the opinions of Dr. Campbell were just ignored . . . ." (Filing 11, Pl.'s Br. at 8.) Fernau observes that the ALJ "just seemed to apply his own medical opinion of limitations (primarily as to the length of the day that the plaintiff could work)," "offered no reason for his rejection of the limitations identified by Dr. Campbell," and "seemed to substitute his medical judgment for that of a treating doctor." (Id.; Filing 15, Pl.'s Reply Br. at 3.)

The "opinions" to which Fernau presumably refers are contained in Dr. Campbell's Medical Impairment Evaluation and Physical Capacities Evaluation. (Tr. 235-241.) In these evaluations, Dr. Campbell concluded that Fernau's insulin-dependent diabetes, peripheral neuropathy, and retinopathy are "disabling" and that Fernau has the capacity to work six hours a day, three days per week.[5] (Tr. 240.)

A treating physician's opinion is generally entitled to substantial weight, see

_____

7. A finding that a treating source's medical opinion is not entitled to controlling weight does not mean that the opinion is rejected. It may still be entitled to deference and be adopted by the adjudicator.

SSR 96-2p, 1996 WL 374188, at *1 (S.S.A. July 2, 1996).

[5]Though not the focus of Plaintiff's argument, Dr. Campbell also concluded that each workday, Fernau could tolerate four hours of sitting, one hour of standing, and one hour of walking; could "continuously" lift up to ten pounds, frequently lift 11 to 20 pounds, and occasionally lift 21 to 50 pounds; should not work at unprotected heights, with marked changes in temperature and humidity, or around dust, fumes, and gases; and Fernau would need to walk around or otherwise shift from sitting, standing, or walking for five to ten minutes each hour. Dr. Campbell also opined that Fernau's impairments were moderate in severity; his diabetes could be controlled with insulin; Fernau's pain would seldom be severe enough to interfere with his attention and concentration; Fernau could reach, grasp, and perform fine manipulations with both hands continuously; and Fernau would not need to elevate his legs or lie down during a work shift. (Tr. 235-36 & 239-40.)

Burress v. Apfel, 141 F.3d 875, 880 (8th Cir. 1998), and must be accorded controlling weight under the regulations if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2).  The Commissioner's regulations also require "that the adjudicator will always give good reasons in the notice of the determination or decision for the weight given to a treating source's medical opinion(s), i.e., an opinion(s) on the nature and severity of an individual's impairment(s)."  SSR 96-2p, 1996 WL 374188, at *5.  See Holmstrom v. Massanari, 270 F.3d 715, 720 (8th Cir. 2001) ("Whether the weight accorded the treating physician's opinion by the ALJ is great or small, the ALJ must give good reasons for that weighting."); Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000) ("[W]hether the ALJ grants a treating physician's opinion substantial or little weight, the regulations also provide that the ALJ must 'always give good reasons' for the particular weight given to a treating physician's evaluation."); Prosch, 201 F.3d at 1013 (same).

In this case, the ALJ properly accorded "less weight to the opinion of the treating physician" because of "inconsistencies in the medical record as well as the doctor's failure to document objective medical evidence to support the claimant's subjective complaints."  (Tr. 18.)  The ALJ correctly noted that Dr. Campbell's opinion that Fernau's diabetes, peripheral neuropathy, and retinopathy were "disabling" did not necessarily mean that Fernau was "disabled" as defined by the Social Security Administration.  Indeed, a medical source opinion that an applicant is "disabled" involves an issue reserved for the Commissioner and therefore is not the type of "medical opinion" to which the Commissioner gives controlling weight. Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005); 20 C.F.R. § 404.1527(e)(1).

The ALJ also explained that Dr. Campbell's opinion that Feranu's impairments were only "moderate" in severity, combined with Fernau's activities as noted in Dr. Campbell's treatment notes from 1997 to 2005, would be inconsistent with a finding that Fernau is completely unable to work on a sustained basis.  (Tr. 17 & 235.)  Dr.

Campbell's records indicate that Fernau has obtained medical treatment for injuries related to ice fishing, wrestling with a child, shoveling snow, playing golf, cleaning a deer carcass, and dropping a "heavy box of steel pipes." (Tr. 197, 200, 203-05, 244, 246, 248, 251-52.) As recently as 2005, Dr. Campbell noted that Fernau was "feeling well" prior to being treated for a kidney stone, "has been reasonably active," "[h]as actually been doing some limited lawn work," had "normal" extremities, and had "good control" over his diabetes. (Tr. 248.)

With respect to Fernau's retinopathy and neuropathy caused by diabetes, the record shows that Fernau had "excellent acuity" in November 2001, and no treatment was indicated. (Tr. 189.) In 2003, Fernau had "a minimal amount" of background diabetic retinopathy in both eyes. He had "a little bit of macular change," but his visual acuity was "quite good" and his "lenses remain clear." (Tr. 188.) Similarly, the record shows that Fernau occasionally experiences leg pain and his response to sensation has decreased, but Dr. Campbell's treatment notes do not appear to indicate any functional restrictions. (Tr. 199, 201-02, 205-07, 245.)

There is evidence that Fernau's diabetes is controllable when he follows prescribed treatment. On multiple occasions, Dr. Campbell counseled Fernau about his diabetic control. (Tr. 199, 202, 207, 213, 245.) In July 2003, Dr. Campbell noted that Fernau has had diabetes for 26 years, but he did not "follow [his] sugar [levels]." (Tr. 199.) The doctor stressed the need for "tight" blood sugar control, and thereafter, Fernau showed "much improved" and "good" diabetic control. (Tr. 196-97, 199, 245.) If an impairment is reasonably amenable to treatment, it cannot serve as a basis for a finding of total disability. Hutton v. Apfel, 175 F.3d 651, 655 (8th Cir. 1999).

Because Dr. Campbell's opinions that Fernau's insulin-dependent diabetes, peripheral neuropathy, and retinopathy are "disabling" and that Fernau has the capacity to work only six hours a day, three days per week, were unsupported by his

own treatment notes and the record as a whole,[6] the ALJ made no error in discrediting Dr. Campbell's opinions.  See Ellis v. Barnhart, 392 F.3d 988, 995 (8th Cir. 2005) (ALJ properly discounted treating physician's opinion that claimant, who admittedly had chronic hip and back pain, could only stand for two hours and sit for four hours, and do neither for more than one hour at a time, where medical records did not show that the doctor ever ordered or even suggested to claimant that he limit the time that he stood or sat); Strongson v. Barnhart, 361 F.3d 1066, 1071 (8th Cir. 2004) (affirming ALJ's decision to give little weight to medical source statement ("MSS") where the completing physician's opinion was "without explanation or support from clinical findings" and "not internally consistent with [his] own treatment notations"); Hogan v. Apfel, 239 F.3d 958, 961 (8th Cir. 2001) (upholding ALJ's decision to discount treating physician's MSS where severe limitations listed on the form "st[oo]d alone," and were "never mentioned in [the physician's] numerous records of treatment" nor supported by "any objective testing or reasoning which would indicate why the claimant's functioning need be so restricted"); 20 C.F.R. § 404.1527(d)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight

---

[6]The ALJ explicitly gave "significant weight," but not controlling weight, to state agency physicians that completed RFC assessments based on then-existing records. (Tr. 216-234.)  These  physicians correctly confirmed that while Fernau complained of vision problems, numbness, and hearing loss, recent exams showed normal visual acuity, negative venous dopplers and A/B indices, and diabetes that is "well controlled when [Fernau] is compliant with diet and insulin."  Neither doctor found any evidence of hearing loss.  "[A]n ALJ may consider the opinion of an independent medical advisor as one factor in determining the nature and severity of a claimant's impairment."  Charles v. Barnhart, 375 F.3d 777, 783 (8th Cir. 2004) (internal quotation marks and citation omitted).  Further, "[e]ven statements made by a claimant's treating physician regarding the existence of a disability have been held to be properly discounted in favor of the contrary medical opinion of a consulting physician where the treating physician's statements were conclusory in nature." Ward v. Heckler, 786 F.2d 844, 846 (8th Cir. 1986).

we will give that opinion."  The converse must also be true.).

## B.  Improper Hypothetical Question

Fernau next complains that the ALJ's hypothetical question[7] posed to the VE did not adequately describe "all of the plaintiff's impairments."  (Filing 11, Pl.'s Br. at 12.)  For example, Fernau points out that the following information from Dr. Campbell was not included in the hypothetical question:

> Plaintiff's treating doctor stated in a Medical Impairment Evaluation that "Patient has had insulin diabetes for 30 years.  Long[-]term sequelae include peripheral neuropathy, retinopathy."  (Tr. 235)  He explained that "prolonged standing, lifting, carrying—exacerbate neuropathy."  (Tr. 236)  Further, Dr. Campbell stated that "patient has attempted employment on several occasions.  The fatigue from working has caused significant problems with diabetic control.  His hearing and vision loss have caused difficulty with job performance."  (Tr. 241)

---

[7]The ALJ posed this hypothetical question to the VE:

> Let's assume that we have someone such as Mr. Fernau, someone of the same age, education and past work history both as to exertional as well as skill level, any transferable skills that may have been gained by virtue of his prior employment and then with these further limitations and restrictions of record, that such a person could lift 20 pounds on an occasional basis, 10 pounds on a frequent basis; could in an eight[-]hour day sit for six hours or stand for six hours and wi[th] normal breaks complete, complete the day; that has unlimited use of his arms and hands and could occasionally bend, stoop, kneel, squat, crawl but really should avoid ladders, scaffolds, heights, open machinery, things of that type and should avoid exposure to concentrated cold or heat.  Now then with such limitations would there be any of the claimant's past relevant work that could be performed?

(Tr. 294-95.)

9

(Filing 11, Pl.'s Br. at 11.)

"'A hypothetical question posed to the vocational expert is sufficient if it sets forth impairments supported by substantial evidence in the record and accepted as true.'"   Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005) (quoting Hunt v. Massanari, 250 F.3d 622, 625 (8th Cir. 2001)); Haggard v. Apfel, 175 F.3d 591, 595 (8th Cir. 1999) (ALJ need not include additional complaints in the hypothetical not supported by substantial evidence).

Fernau's argument relies on the opinion of Dr. Campbell which, for the reasons discussed above, the ALJ considered, but accorded "less weight." (Tr. 18.) Here, the ALJ properly included in his hypothetical only those functional limitations that were consistent with the record as a whole and which the ALJ reasonably accepted as true. For example, Dr. Campbell's statement that prolonged standing, lifting, and carrying exacerbate Fernau's neuropathy is not supported by his treatment notes, diagnostic tests, or laboratory findings.  Dr. Campbell's opinion that fatigue from working has caused significant problems with Fernau's diabetic control is belied by the record, which shows that (a) Fernau had blood-sugar-control problems in years he was not working—that is, since 1999 (Tr. 89-90); (b) treating and consulting physicians' notes indicate that Fernau's diabetic-control problems were related to his failure to follow his sugar levels and a proper diet; and (c) recently Fernau was characterized as having "good" control over his diabetes.  Finally, Dr. Campbell's statement that Fernau's hearing and vision loss have caused difficulty with job performance also contradicts the record, which contains no objective tests or laboratory findings indicating hearing loss and shows only a minimal amount of background diabetic retinopathy, good visual acuity, and clear lenses.

Because the ALJ's hypothetical given to the vocational expert was proper, the ALJ's reliance on the vocational expert's testimony in reaching the conclusion that

Fernau was not disabled was not error. "A vocational expert's testimony based on a properly phrased hypothetical question constitutes substantial evidence." <u>Goff</u>, 421 F.3d at 794 (internal quotation marks and citations omitted).

## C. Plaintiff's Credibility

Fernau next submits that while the ALJ "recited the authorities for the standard of review that he was obliged to follow and acknowledged the rules and guidelines to be used to determine credibility[,] . . . . it is impossible to evaluate the process of determining the credibility employed by the ALJ." (Filing 11, Pl.'s Br. at 12.) Specifically, Fernau complains that the ALJ incorrectly stated that "the claimant has really never worked prior to his alleged onset of disability"; the ALJ neglected to include or consider Fernau's allegations that his diabetes is worsening; the ALJ "overstated the plaintiff's daily activities and appeared to focus his attention on the plaintiff's recreational activities," while failing to mention Fernau's testimony that he can no longer trap, golf, mow, landscape, hunt, or fish; and the ALJ should have found the plaintiff credible because the ALJ identified "no evidence of daily activities inconsistent with the plaintiff's claims of severity of symptoms" and "no evidence to contradict the plaintiff's claims of duration and intensity of . . . his pain and discomfort." (<u>Id.</u> at 12-14.)

"When a plaintiff claims that the ALJ failed to properly consider subjective complaints of pain, the duty of the court is to ascertain whether the ALJ considered all of the evidence relevant to the plaintiff's complaints of pain under the <u>Polaski</u> standards and whether the evidence so contradicts the plaintiff's subjective complaints that the ALJ could discount his or her testimony as not credible." <u>Masterson v. Barnhart</u>, 363 F.3d 731, 738-39 (8th Cir. 2004).

To assess a claimant's credibility, the ALJ must consider all of the evidence, including prior work records and observations by third parties and doctors regarding

daily activities; the duration, frequency, and intensity of pain; precipitating and aggravating factors; the dosage, effectiveness, and side effects of medication; and functional restrictions.  Lowe v. Apfel, 226 F.3d 969, 971-72 (8th Cir. 2000) (citing Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984)).  The ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole.  Id. at 972.  Where adequately explained and supported, credibility findings are for the ALJ to make.  Id. (citing Tang v. Apfel, 205 F.3d 1084, 1087 (8th Cir.2000)).

The ALJ is not required to discuss methodically each Polaski consideration, so long as he acknowledges and examines those considerations before discounting the subjective complaints.  Id. (citing Brown v. Chater, 87 F.3d 963, 966 (8th Cir.1996)). Even so, the ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the plaintiff's complaints. Masterson v. Barnhart, 363 F.3d 731, 738 (8th Cir. 2004).  It is not enough that the record contains inconsistencies; the ALJ must specifically demonstrate that he considered all of the evidence.  Id. at 738-39.

The ALJ in this case specifically cited Polaski, acknowledged the factors he was to consider in assessing Fernau's credibility, and specifically discussed Fernau's work record; observations and notes by Fernau's treating and consulting physicians; Fernau's complaints of pain and diabetic retinopathy; Fernau's many visits to the emergency room; and Fernau's recreational activities.  The ALJ specifically noted inconsistencies in the record as a whole that reflected poorly upon Fernau's credibility.  For example, the ALJ stated that while he did not equate Fernau's recreational activities, such as golf, with full-time work, the ALJ did find that "this activity contributes to the claimant's lack of credibility concerning his allegations." (Tr. 16.) Further, the ALJ acknowledged that while Fernau claimed that his condition has worsened within the last year, "other than the June 2005 urinary stone, nothing

12

in the record supports this allegation." (Tr. 17.)

The ALJ's decision in this case reflects that he considered all of the evidence, and, while giving some credence to Fernau's complaints of pain, he rejected Fernau's claim that he is disabled and completely unable to perform any work in the national economy as being inconsistent with his medical history and activities of daily living. I find no error in this regard.  Haggard, 175 F.3d at 595 (evidence as a whole supported ALJ's conclusion that claimant's testimony was credible to the extent he had some pain, but not to the extent he claimed he could not perform any type of work).

## III.  CONCLUSION

For the reasons explained above, I find that the Commissioner's decision is supported by substantial evidence on the record as a whole and is not contrary to law.

Accordingly,

IT IS ORDERED that the decision of the Commissioner is affirmed.  Judgment shall be entered by separate document.

June 11, 2007.

BY THE COURT:
s/ *Richard G. Kopf*
United States District Judge